E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
STEPHANIE L. ORRICK (Cal. Bar No. 199251)
Special Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6159
    Facsimile: (213) 894-0141
    E-mail:     stephanie.orrick@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>AUBREY CLEMONS,<br><br>      Defendant. | No. CR 23-484-PA<br><br>GOVERNMENT'S SENTENCING POSITION<br>FOR DEFENDANT AUBREY CLEMONS<br><br>Hearing Date: February 12, 2024<br>Hearing Time: 8:30 a.m.<br>Location:     Courtroom of the<br>               Hon. Percy Anderson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Special Assistant United States Attorney Stephanie L. Orrick, hereby files its sentencing position for defendant AUBREY CLEMONS.

//

//

This sentencing position is based upon the attached memorandum of points and authorities, the attached exhibit, the files and records in this case, and such further evidence and argument as the Court may permit. The government respectfully reserves the right to file a response to any of defendant's sentencing positions and to file a supplemental sentencing position if necessary.

Dated: February 3, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
Stephanie L. Orrick
Special Assistant United States
Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant AUBREY CLEMONS ("defendant"), attempted to transport fentanyl through the Los Angeles Airport ("LAX"). Defendant entered LAX with a neck pillow filled with fentanyl. Defendant proceeded to the Transportation Security Administration ("TSA") checkpoint and place a bag with the neck pillow on the X-ray conveyer belt. When TSA noticed something unusual with the neck pillow and send defendant to secondary screening, defendant fled LAX, leaving the neck pillow behind.

On December 19, 2023, defendant pleaded guilty a single count indictment, which charged defendant with possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi). (Dkt. 10 (plea agreement).)

On January 25, 2024, the United States Probation and Pretrial Office ("USPPO") filed its Revised Presentence Investigation Report ("PSR"), in which it calculated a total offense level of 23 and determined that defendant falls within Criminal History Category VI, resulting in an advisory Guidelines range of 92 to 115 months. (Dkt. 27.) The government agrees with the PSR's findings as it relates to the total offense level of 23. The government does not agree with the criminal history calculation at VI as it appears to overstate defendant's criminal history calculation based on a prior conviction, as set forth below, that resulted in a significant jail sentence compared to the crime charged. The government respectfully requests the Court calculate defendant's criminal history category at V and impose a Guideline sentence of: (i) 84 months' imprisonment; (ii)

1    followed by three years' supervised release[1]; and (iii) a mandatory
2    special assessment of $100.

3    **II.  STATEMENT OF FACTS**

4            On September 16, 2023, defendant met an individual (hereinafter
5    "Co-conspirator 1") at a restaurant in Louisville, Kentucky. (PSR ¶
6    8.) Co-conspirator 1 told defendant that he had purchased marijuana
7    edibles in Los Angeles, California, and that he needed someone to
8    bring the edibles back to Louisville. (PSR ¶ 8.) Co-conspirator 1
9    told defendant that in return for transporting the marijuana edibles,
10   defendant would be able to keep a portion of the shipment. (PSR ¶ 9.)
11   Defendant agreed, and he was given a flip phone with Co-conspirator
12   1's phone number saved to the phone. (PSR ¶ 9.)

13           Defendant travelled to Los Angeles. (PSR ¶ 10.) Defendant
14   contacted Co-conspirator 1 and informed him where he was staying.
15   (PSR ¶ 10.) Co-conspirator 1 told defendant that someone was going to
16   come to his hotel room and deliver a bag to him. (PSR ¶ 10.) An
17   unknown male came to defendant's hotel room and delivered a bag with
18   a large number of pills, which surprised defendant because this was
19   not what he had agreed to transport. (PSR ¶ 11.) Defendant then
20   destroyed the flip phone that he received from Co-conspirator 1 and
21   placed the pills inside of a neck pillow. (PSR ¶ 11.)

22           On September 18, 2023, defendant entered the TSA checkpoint at
23   LAX. (PSR ¶ 12.) At the TSA security checkpoint, defendant placed a
24   bag with the neck pillow on the conveyer belt leading to the X-ray
25   machine. (PSR ¶ 12.) TSA notice something unusual with the neck

26
27           [1] The government recommends that the Court, at sentencing,
     verify that defendant has been informed of the standard conditions of
28   supervised release enumerated in General Order 20-04, and then
     incorporate by reference and impose those conditions.

2

pillow and sent defendant to a second TSA screener. (PSR ¶ 12.)
Defendant then fled the TSA security checkpoint, leaving the neck
pillow behind. (PSR ¶ 13.)

The neck pillow was subsequently found to have contained 1,099
grams of M30 N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide
(fentanyl) pills. (PSR ¶ 15.)

**III. THE PRESENTENCE REPORT AND THE GOVERNMENT'S PROPOSED GUIDELINE
CALCULATION**

The USPPO issued a PSR in which the USPPO calculated a base
level of 30. (U.S.S.G. §§ 2D1.1(a)(5), (c)(5)); PSR ¶ 22.) The USPPO
deducted two-levels for specific offense characteristics because
defendant is eligible for "safety valve" relief.[2] (U.S.S.G.
§ 2D1.1(b)(18); PSR ¶ 23.) The USPPO subtracted two-levels for
defendant's minor role in the offense. (U.S.S.G. § 3B1.2(b); PSR ¶
30.) After applying a three-level reduction for acceptance of
responsibility, the USPPO determined defendant's total offense level
is 23. (U.S.S.G. §§ 3E1.1(a) & (b); PSR ¶¶ 34-37.)
(PSR ¶¶ 21-37.) The government agrees with the USPPO's calculation of
the total offense level of 23.

The government, however, disagrees with the USPPO's criminal
history category calculation of VI as it appears to overstate
defendant's criminal history calculation based on a 2004 felony
conviction for the sale/rental of illegal copies of recordings in
violation of Kentucky Revised Statutes 434.445. (PSR ¶ 44.) Defendant

---

[2] The USAO preserves the right to object that United States v.
Lopez, 998 F.3d 431 (9th Cir. 2021) was wrongly decided.  The Supreme
Court granted certiorari in the Eight Circuit case United States v.
Pulsifer, 39 F.4th 1018 (8th Cir. 2022) to resolve the circuit slit on
this issue.

was sentenced to 5 years' imprisonment. (PSR ¶ 44.) This jail sentence resulted in 3 points towards defendant's criminal history which placed him in a criminal history category of VI. After reviewing a Statement to Law Enforcement dated September 2, 2004, provided by defendant, and reviewing the nature of the charge[3], it appears that defendant's criminal history category over-represents the seriousness of the defendant's criminal history as to this specific conviction. See Ex. A (Statement to Law Enforcement dated September 2, 2004). Specifically, the letter appears to show that defendant's crime was one of opportunity and, given that it involved selling stolen disks, a five-year sentence (and the resulting criminal history points) do not accurately reflect the crime. As such, the government respectfully requests the Court calculate defendant's criminal history category at V.

With an offense level of 23 and a criminal history category of V instead of VI, the Guideline imprisonment range would be 84 to 105 months' custody.

## IV.  GOVERNMENT'S SENTENCING POSITION

### A.  A 84 Month Term of Imprisonment is an Appropriate Sentence for Defendant Considering the § 3553(a) Factors

The government recommends that the Court sentence defendant to: (i) 84 months' imprisonment; (ii) followed by three years supervised release; and (iii) a mandatory special assessment of $100. Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

---

[3] According to the Statement to Law Enforcement, defendant did not make or copy the movies. The movies were from street vendors in Atlanta and were in the back of defendant's car when law enforcement saw them and arrested defendant.

4

1          1.   Nature and Circumstances of the Offense

2          The recommended sentence adequately reflects the serious nature

3    of defendant's offense. Defendant brought 1099 grams of M30 fentanyl

4    pills concealed in a neck pillow to LAX and attempted to go through

5    the security checkpoint when he was sent to a secondary inspection.

6    (PSR ¶¶ 12 to 15.)

7          That being said, defendant had a minor role in the development

8    of the scheme of the crime. He did not use violence or threats, he

9    did not possess a weapon nor was he a leader or manager in the crime.

10   Defendant transported the drugs at the direction of the individual he

11   met at the restaurant and accepted responsibility for his actions.

12   Accordingly, a low-end guidelines sentence of84 months' imprisonment

13   is appropriate given the nature and circumstances of the offense.

14         2.   History and Characteristics of Defendant

15         Defendant's history and characteristics also warrant the

16   government's recommended sentence.  See 18 U.S.C. § 3553(a)(1).  The

17   government recognizes certain mitigating circumstances in this case,

18   including: (i) defendant's struggle with substance abuse and

19   addiction (PSR ¶¶ 108-114); (ii) childhood sexual abuse (PSR, ¶ 87

20   and 88.); and his struggle with depression. (PSR, ¶¶ 106-107.) The

21   government believes these factors warrant the government's

22   recommended sentence.

23         3.   Need To Reflect Seriousness Of Offense; Promote

24              Respect For The Law; Provide Just Punishment; Afford

25              Adequate Deterrence; And Protect The Public From

26              Further Crime

27         The sentence must satisfy the need to punish defendant, as well

28   as society's need to reflect the seriousness of the offense; promote

                                    5

respect for the law; provide just punishment; afford adequate
deterrence; and protect the public.  18 U.S.C. § 3553(a)(2).  Those
objectives justify the government's recommended within-Guidelines,
84-month' sentence.  A 84-month sentence is a significant sentence
that accounts for the serious nature of defendant's crime and his
knowing distribution of a deadly and potent drug.  Such a significant
sentence also provides just punishment and will adequately deter
defendant and protect the public.

                4.   <u>Need To Avoid Unwarranted Disparities</u>

      Section 3553(a)(6) requires the Court to minimize sentencing
disparities among similarly situated defendants.  One way of doing so
is to correctly calculate the Guidelines range and then sentence
defendants within that range.  <u>See</u> <u>United States v. Treadwell</u>, 593
F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was
correctly calculated, the district court was entitled to rely on the
Guidelines range in determining that there was no 'unwarranted
disparity' . . . ."), <u>overruled on other grounds by</u> <u>United States v.</u>
<u>Miller</u>, 953 F.3d 1095, 1103 (9th Cir. 2020); <u>Gall v. United States</u>,
552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was
clearly considered by the Sentencing Commission when setting the
Guidelines ranges.").  Here, under the USPPO's and government's
proposed calculated Guidelines range, other defendants "with similar
records who have been found guilty of similar conduct" as defendant,
can expect a prison sentence between 168 to 210 months' imprisonment.
<u>See</u> U.S.S.G. § 5A (Sentencing Table).  Accordingly, the government's
recommended sentence, which is at the low end of that range and falls
within the range agreed to by the government in the parties' plea

agreement, avoids an unwarranted disparity with similarly situated defendants.

**B.   Fine and Supervised Release**

The government recommends that the Court order defendant to pay a $100 mandatory special assessment, but that defendant's fines should be waived pursuant to U.S.S.G. § 5E1.2(a) because the USPO found that he is unable to pay any such fine.  (PSR, ¶¶ 130-131.)

The government also recommends a three-year period of supervised release.  Defendant has a long criminal history, multiple violations and a limited history of employment.  Accordingly, a three-year period of supervised release will help to ensure that defendant continues to diligently abide by the law upon his release from custody.

**V.   CONCLUSION**

For the reasons set forth above, the government respectfully requests that defendant be sentenced as follows: (i) 84 months' imprisonment; (ii) 3 years supervised release; and (iii) a special assessment of $100.  Based on defendant's lack of resources, the government believes that no fine is warranted here.

# EXHIBIT A

Page __1__ of __2__
Date __9-2-04__ & Time __09:30__

I, __Aubrey Clemons__, make the following free and voluntary statement to __Bobby McChesney__ known to me to be a Munfordville Police Officer. The officer has advised me of my right to counsel and that I do not have to make a statement. I understand these rights and waive these rights. The statement given below was written by __Aubrey__ as related by me. I am __22__ years old and can / cannot read and write, having completed the __12th__ year of school.

I was on my way to Louisville from pickin' up my brother. We stoped at gase station. My Brother asked clerk for some gas, he offer some music to guys on side. Police came while I was pumpin' gas. I pulled off. They (cops) pulled me over An asked to check can They saw movies. My Brother told cop that I Didn't try to sell them at gas stop, An that they where his. I got Arrested. Today he (cop) read me my "rights". I told him that the movies can be found in Atlanta, GA in the West end towns. No name of the guy. I Didn't Purches them, I picked-

I have read/ have had read to me the above statement consisting of this and_____ other pages, initialed each page, corrected and initialed any errors contained therein. It is true and correct to the best of my knowledge and belief.

Signed this the __2nd__ day of __Sept__, 20 __04__ at __0930__ hours.

Signed _____

Witness: ____ MPD 204   Witness: _____

Page __2__ of __2__
Date __9-2-04__ & Time __09:30__

I, __Aubrey Clemons__, make the following free and voluntary statement to _____ known to me to be a Munfordville Police Officer. The officer has advised me of my right to counsel and that I do not have to make a statement. I understand these rights and waive these rights. The statement given below was written by __Aubrey__ as related by me. I am _____ years old and can / cannot read and write, having completed the _____ year of school.

Them up along with my brother from Atlanta. The movies are just another part of a scam I ~~guess~~ guess the street venders in Atlanta pleyed him with. I have no knowledge of the criminal side of the movies nor Do I know where, How or who make them. I told Arresting officer that I would tell the truth As long As he understood that I didn't know that the movies where trouble.

_____

_____

I have read/ have had read to me the above statement consisting of this and_____ other pages, initialed each page, corrected and initialed any errors contained therein. It is true and correct to the best of my knowledge and belief.

Signed this the __2^nd__ day of __Sept__, 20__04__ at __9:30__ hours.

Signed _____

Witness: _____ APD 204   Witness: Depu JC Puckey